UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALEXANDRA CIMINO WINNER,

Plaintiff,

Case # 17-CV-6857-FPG

v.

DECISION AND ORDER

TRYKO PARTNERS, LLC,

Defendant.

## INTRODUCTION

On December 12, 2017, Plaintiff Alexandra Cimino Winner brought this action for sex-based discrimination and retaliation against Defendant Tryko Partners, LLC pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–301. ECF No. 1. On January 29, 2018, Defendant filed a Motion to Dismiss. ECF No. 8. Defendant contends that the Complaint should be dismissed pursuant to (1) Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction; (2) Rule 12(b)(5), for improper service of process; and (3) Rule 12(b)(3) and 28 U.S.C. § 1406(a), for improper venue. *See* ECF No. 8. In the alternative, Defendant seeks to have the case transferred to the District of New Jersey pursuant to 28 U.S.C. § 1404.

For the reasons that follow, Defendant's Motion to Dismiss (ECF No. 8) is DENIED in all respects, and this case will remain in the Western District of New York.

# BACKGROUND[1]

Plaintiff alleges that, on or about March 6, 2016, she accepted an offer to serve as Defendant's Director of Marketing.[2] Defendant is based in New Jersey, but Plaintiff received and executed the offer letter at her home in Rochester, New York, and Defendant expressly agreed to Plaintiff "continuing to live and work [in Rochester, New York]" in her capacity as Director of Marketing. Plaintiff only visited Defendant's offices in New Jersey "two (2) – three (3) times during [her] entire employment"—Plaintiff claims that, although she requested to visit once a month, she was repeatedly told that she "did not need to come." ECF No. 10, at 2–3.

To facilitate Plaintiff's work in New York, Defendant provided her with a company laptop, which she used to "regularly perform all of [her] . . . job duties . . . including emails, reports, spreadsheets, telephone and conference calls." *Id.* at 2. When she was not traveling for Defendant "across the Northeast," she was working from home in New York. *Id.* That work included conference calls with her assistant "to discuss action items and future campaigns," phone conversations "with various property managers," and frequent correspondence over telephone and email with Yonah Kohn, Defendant's President, "to discuss upcoming travel plans and where he thought [Plaintiff's] services were most needed." *Id.* at 3. Plaintiff also attended multiple meetings with vendors in New York regarding projects for Defendant. In sum, "[t]he majority of the business activities and services [Plaintiff] performed on behalf of [Defendant] took place . . . in New York." *Id.* Plaintiff continued to serve as Director of Marketing from her home in Rochester, New York until her termination on November 15, 2016.

---

[1] All facts are drawn from Plaintiff's Complaint (ECF No. 1) and the affidavits and supporting materials submitted in response to Defendant's Motion to Dismiss (ECF No. 8). *See, e.g.*, *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (per curiam).

[2] Throughout her submissions, Plaintiff alleges that Defendant—Tryko Partners, LLC—employed her. *See* ECF Nos. 1, 10. Defendant's disagreement at this stage of the proceedings is addressed *infra*.

Plaintiff alleges that, during the course of her employment, she was subjected to sex-based discrimination. She maintains that, from March 2016 through July 2016, her immediate supervisor—Ryan Baker, Defendant's Vice President of Asset Management—engaged in a number of discriminatory activities. Plaintiff claims that, because she is a woman, Mr. Baker "prohibited her from visiting the corporate office," "routinely push[ed] his responsibilities onto" her, and "refused to reimburse [her] for business-related travel expenses." ECF No. 1, at 3. In addition, she alleges that Mr. Baker called her "'sparkle' and brought her to business meetings to 'please' the male bankers." *Id.*

Plaintiff claims that, "[o]n many occasions," she was present when Mr. Baker and others "made sexually denigrating comments about female colleagues." *Id.* She also alleges that, "on many occasions," Mr. Baker told her "he would not promote a female employee because she was 'not attractive enough,' and that he would prefer to promote a more attractive woman in hopes of 'sleeping with her.'" *Id.* at 3–4. When "the situation with Mr. Baker worsened" in or around July 2016, Plaintiff traveled to Defendant's corporate office in New Jersey to report and complain of Mr. Baker's conduct. *Id.* at 4. Plaintiff maintains that "Defendant's failure to investigate and take appropriate action caused the discrimination to continue." *Id.*

Plaintiff recounts additional instances of male employees making sexual comments about female co-workers, along with "sexually derogatory and inappropriate comments" from other employees. *Id.* She also maintains that, in or around August 2016, Mr. Kohn "pressured [her] to delay her honeymoon," but did not require the same of male employees. *Id.*

Plaintiff additionally alleges that Defendant's failure to investigate and address the situation in or around July 2016 allowed George Lewis, Defendant's Director of Asset and Quality Service, to subject her to further discrimination. She claims that, "[o]n or about August 23, 2016,

Mr. Lewis apologized . . . for not attending her wedding, stating that she was 'very important to him' and that he had feelings for her and 'could not see [her] marry someone else.'" *Id.* at 5. When Plaintiff complained to Mr. Kohn "on or about September 6, 2016," Mr. Kohn "laughed it off, made jokes that she was 'breaking hearts in the company' and refused to investigate or remediate the conduct." *Id.* Plaintiff later complained to Mark Dewey, Defendant's Regional Property Manager, but "her complaints were again ignored." *Id.*

Plaintiff maintains that, in sum, the alleged misconduct created "a particularly difficult and stressful work environment." *Id.* at 6. She continued to work from her home in New York until November 15, 2016, when she was notified that "her position was allegedly being eliminated" and that Defendant "would not be replacing [her] or hiring someone with a marketing title." *Id.* at 6. However, Plaintiff later learned that, on or about November 21, 2016, Defendant "hired an individual to replace her under the title Regional Leasing and Marketing Manager." *Id.*

## I.     Motion to Dismiss for Lack of Personal Jurisdiction

The plaintiff bears the burden of demonstrating that personal jurisdiction exists over a defendant. *E.g.*, *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727–28 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)). Additionally, the plaintiff "must establish the court's jurisdiction with respect to each claim asserted." *Sunwards Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (emphasis omitted).

In resolving a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *E.g.*, *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d

81, 84 (2d Cir. 2013) (per curiam) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899,

904 (2d Cir. 1981)). Notably, however, the showing required of the plaintiff depends upon the

posture of the case: pre-discovery, a plaintiff need only plead, "in good faith, legally sufficient

allegations of jurisdiction." *See id.* at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*,

902 F.2d 194, 197 (2d Cir. 1990)). "At that preliminary stage," such allegations alone suffice to

meet the plaintiff's *prima facie* showing. *See id.* at 85 (quoting *Ball*, 902 F.2d at 197).

> Typically, a defendant will dispute the jurisdictional facts alleged
>
> in one of three ways: (1) by a Rule 12(b)(2) motion, which assumes the truth of the plaintiff's factual allegations for purposes of the motion and challenges their sufficiency, (2) by a Rule 56 motion, which asserts that there are undisputed facts demonstrating the absence of jurisdiction, or (3) by a request for an adjudication of disputed jurisdictional facts, either at a hearing on the issue of jurisdiction or in the course of trial on the merits.

*Id.* (quoting *Ball*, 902 F.2d at 197).  When a defendant files a Rule 12(b)(2) motion—remaining

"content to challenge only the sufficiency of the plaintiff's factual allegation[s]"—"the plaintiff

need persuade the court only that its factual allegations constitute a *prima facie* showing of

jurisdiction." *Id.* (quoting *Ball*, 902 F.2d at 197). In assessing the plaintiff's showing, the court

may consider materials outside the pleadings without converting the Rule 12(b)(2) motion into a

motion for summary judgment. *See id.* at 86; *see also, e.g.*, *Taylor Devices, Inc. v. Walbridge

Aldinger Co.*, 538 F. Supp. 2d 560, 575 (W.D.N.Y. 2008) (specifying that, in response to a Rule

12(b)(2) motion, a plaintiff may demonstrate personal jurisdiction through its pleadings or "its

own affidavits and supporting materials") (adopting report and recommendation). Where no

evidentiary hearing is held,[3] "the pleadings and affidavits are construed, and any ambiguity is

---

[3] Neither party has requested an evidentiary hearing on the jurisdictional facts alleged. Accordingly, the Court proceeds to resolve Defendant's Motion on the pleadings and affidavits submitted. *See Dorchester*, 722 F.3d at 86 (explaining that the district court did not err "in failing to hold an evidentiary hearing, as there [wa]s no indication that either party requested one"); *see also Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 472 n.4 (E.D.N.Y. 2015); *Amer Sports Winter & Outdoor Co. v. Kastner*, No. 1:12-cv-186-jgm, 2013 WL 1314532, at *2 (D. Vt. Mar. 28, 2013).

resolved, in favor of the plaintiff," *see Taylor*, 538 F. Supp. 2d at 575, "notwithstanding any controverting presentation by" the defendant, *Dorchester*, 722 F.3d at 86 (quoting *Marine Midland Bank*, 664 F.2d at 904) (expressly rejecting "the principle that[,] where 'a defendant rebuts a plaintiff's unsupported allegations with direct, highly specific testimonial evidence regarding a fact essential to jurisdiction—and the plaintiff does not counter that evidence—the allegation may be deemed refuted'" (citation omitted)).

For the Court to determine that it has personal jurisdiction over Defendant, two things must be true: (1) the long-arm statute of the forum state—here, New York—must permit the exercise of personal jurisdiction over Defendant; and (2) the exercise of personal jurisdiction over Defendant must comport with the Due Process Clause of the U.S. Constitution. *See, e.g.*, *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010) (detailing the two-step inquiry in which a court must engage "[t]o determine personal jurisdiction over a non-domiciliary in a case involving a federal question"); *cf. Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (explaining that, "[i]n the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution," state law governs the question of "personal jurisdiction over a foreign corporation"). Moreover, for the Court to actually exercise personal jurisdiction over Defendant, Defendant must have also been properly served. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* (*Licci II*), 673 F.3d 50, 59 (2d Cir. 2012).

A.      **New York's Long-Arm Statute**

Section 302(a)(1) of the New York Civil Practice Law and Rules provides that,

> [a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary[] . . . who in person or through an agent[] transacts any business within the state or contracts anywhere to supply goods or services in the state.

N.Y. C.P.L.R. 302(a)(1) (McKinney 2008). Thus, pursuant to section 302(a)(1), the Court must assess (1) whether Defendant "transacts any business" in New York; and (2) whether Plaintiff's claims "aris[e] from" that transaction of business. *See, e.g.*, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

### 1. Transaction of Business in New York

A defendant "transacts business" within New York by engaging in purposeful activity within the state—specifically, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Id.* (citation omitted). This analysis looks to "the totality of the defendant's activities within the forum." *E.g.*, *id.* (quoting *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortg. Inv'rs*, 510 F.2d 870, 873 (2d Cir. 1975)).

Defendant argues that it "did not hire Plaintiff, has no offices or employees in New York, and conducts no activity in New York." ECF No. 8-1, at 12. Indeed, Defendant contends that Plaintiff's actual employer was "First Accounting Property Services, LLC," and that "Tryko Partners is merely a trade name." *See* ECF No. 11, at 5. Plaintiff, however, maintains otherwise: throughout her Complaint and Affidavit, Plaintiff names Defendant as her employer, and her allegations reference only Defendant, not "First Accounting Property Services, LLC." *See* ECF No. 1, at 2; ECF No. No. 10, at 1–4.

By the Court's reading, Plaintiff clearly and repeatedly identifies Defendant as her sole employer. If Defendant sought to present evidence to the alternative, its choice to file a pre-discovery Rule 12(b)(2) motion with no request for an evidentiary hearing means that—as discussed *supra*—it is limited to challenging the *sufficiency* of Plaintiff's allegations, not their veracity. Defendant may elect to raise the proper-employer issue again, but—at this stage—

Plaintiff's factual allegations must be credited as true, "notwithstanding any controverting presentation by Defendant," *Dorchester*, 722 F.3d at 86 (quoting *Marine Midland Bank*, 664 F.2d at 904), and the Court looks only to the sufficiency of Plaintiff's allegations.

Where an out-of-state employer contemplates and creates an ongoing relationship with a New York employee to further its own business in the state, such proactive efforts may suffice as "transacting business" within the purview of New York's long-arm statute. *See, e.g.*, *Williams v. Preeminent Protective Servs., Inc.*, 81 F. Supp. 3d 265, 271–72 (E.D.N.Y. 2015) ("Plaintiff's decision to work from home[] . . . was not unilateral. Defendants hired her knowing that she would live and work in Brooklyn, and 'continued their communications with plaintiff here' for a sustained period of time, thereby engaging in the kind of 'independent activities' in the state that render long-arm jurisdiction appropriate." (quoting *Fischbarg v. Doucet*, 880 N.E.2d 22, 27–28 (N.Y. 2007))); *see also Fischbarg*, 880 N.E.2d at 27–29. In addition, "the setting up of important meetings for the company in New York establishes purposeful use under New York's long[-]arm statute." *Launer v. Buena Vista Winery, Inc.*, 916 F. Supp. 204, 210 (E.D.N.Y. 1996).

Considering Plaintiff's submissions in the light most favorable to her, she has sufficiently alleged that Defendant "transacted business" in New York within the scope of section 302(a)(1). Plaintiff claims that Defendant hired her with the express agreement, "from the outset[,] that [she] would work from New York." ECF No. 10, at 2. Moreover, per Plaintiff's account, Defendant provided a company laptop for Plaintiff to use from her home in New York to conduct business on Defendant's behalf. *Id.* Plaintiff alleges that she "regularly perform[ed] all of [her] . . . job duties at home in Rochester, New York" because Defendant "affirmatively did not want" her at its corporate office in New Jersey. *See id.* Credited as true, these allegations suggest that Defendant clearly contemplated—and created—a continuing relationship for the provision of marketing

services, via Plaintiff, in New York. Plaintiff also maintains that she "met with vendors in New York . . . for various Tryko projects," both individually and with other representatives from Defendant's corporate office. *See id.* at 3. Assuming the veracity of these claims, they reflect that Defendant sought to further its business contacts and relationships in New York—indeed, sending representatives from its corporate office to the state to accompany Plaintiff. In sum, Plaintiff's factual allegations are sufficient to demonstrate that Defendant "transacted business" in New York.

### 2. Claims Arising from the Transaction of Business in New York

Claims "arise from" the transaction of business "when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" *Best Van Lines*, 490 F.3d at 249 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)); *see also Chloé*, 616 F.3d at 167 (instructing that the nexus requirement "merely requires the cause of action to 'relate to' [the] defendant's minimum contacts with the forum"). The link must be more than "merely coincidental," *see Best Van Lines*, 490 F.3d at 249 (quoting *Solé Resort*, 450 F.3d at 103), but it need not be strictly causal—instead, there must simply be "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former," *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* (*Licci IV*), 732 F.3d 161, 168–69 (2d Cir. 2013) (quoting *Licci v. Lebanese Canadian Bank* (*Licci III*), 984 N.E.2d 893, 900 (N.Y. 2012)). That relatedness does not require each element of Plaintiff's claim to be connected to Defendant's transaction of business in New York. *See id.* at 169. As long as "at least one element [of Plaintiff's claim] arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under [section 302(a)(1)]." *Id.* (quoting *Licci III*, 984 N.E.2d at 901).

As a preliminary matter, the Court observes that—by definition—Plaintiff's claims of discrimination and retaliation would appear to "relate" to her employment, which was contemplated to, and did, occur in New York. Put simply, Defendant reached into New York to create and maintain an ongoing employment relationship with Plaintiff, and Plaintiff's claims against Defendant emerged from that relationship. Indeed, within the scope of employing Plaintiff in New York for the provision of her marketing services in, among other states, New York, Defendant allegedly subjected her to discrimination and, ultimately, retaliation for complaining of that discrimination.[4] It would seem to the Court that, by their terms, Plaintiff's claims of discrimination and retaliation against Defendant cannot be characterized as "unmoored" from the course of employment during which they occurred (and from which, as employment claims, they necessarily derive). *See Vodopia v. Koninklijke Philips Elecs., N.V.*, 398 F. App'x 659, 661 (2d Cir. 2010) (summary order) (determining that, in a case alleging unlawful retaliation under the Sarbanes-Oxley Act, "the allegations in the complaint[] . . . establish specific jurisdiction because they make clear that this suit 'arise[s]' from PENAC's 'transact[ion] of business within the state'— specifically, its employment of plaintiff" in New York), *abrogated on other grounds as recognized in Kuhns v. Ledger*, 202 F. Supp. 3d 433, 439 (S.D.N.Y. 2016); *Solé Resort*, 450 F.3d at 104 ("In cases where claims have been dismissed on jurisdictional grounds for lack of a sufficient nexus . . . the event giving rise to the plaintiff's injury had, at best, a tangential relationship to any contacts the defendant had with New York."); *cf. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (reasoning that, for purposes of due process, "[t]he[] contacts may not have directly given rise to the plaintiff's cause of action, [but] they certainly 'relate to'

---

[4] Notably, this is not an employment case in which an *individual* defendant, such as a supervisor, is contesting the exercise of personal jurisdiction. Here, the *employer* defendant is contesting the exercise of personal jurisdiction over *it*. Therefore, the Court looks to the entirety of Defendant's contacts—it does not engage in a constrained, person-by-person assessment of individual employees' New York contacts.

it"). *But see Litton v. Avomex Inc.*, No. 08-CV-1340 (NAM/DRH), 2010 WL 160121, at *5–6 (N.D.N.Y. Jan. 14, 2010).

Defendant attempts to distinguish Plaintiff's reliance on *Williams*, 81 F. Supp. 3d 265, which Plaintiff cites for its discussion and application of New York's long-arm statute. *See* ECF No. 10, at 19–21. Defendant argues that, in *Williams*, the plaintiff's claims unquestionably arose from the defendants' New York activities. *See* ECF No. 11, at 7 ("As the plaintiff lived in New York, was paid in New York, and was terminated in New York, any dispute over payment was unquestionably related to the defendants' contacts with New York."). Defendant contends that, by comparison, Plaintiff "has not alleged that any of the alleged discriminatory conduct occurred in New York," nor "that she was terminated in New York." ECF No. 11, at 6.

Defendant is correct that Plaintiff does not specifically identify the state in which each instance of alleged misconduct occurred. If Plaintiff had expressly alleged that all of the communications and conduct at issue occurred in New York, Defendant's concerns would likely be alleviated. But to require such an exacting showing would appear to, in effect, require the direct causality that New York courts have rejected with respect to section 302(a)(1). *See Licci IV*, 732 F.3d at 168–69; *see also Chloé*, 616 F.3d at 167 ("We think the district court's characterization of [the d]efendants' non-Chloé sales as constituting purposeful availment of New York only for '*some* business activity,' but not for 'the purpose of selling Chloé handbags—the only activity upon which [the p]laintiffs' complaint is based,' too narrowly construes the nexus requirement, which merely requires the cause of action to 'relate to' defendant's minimum contacts with the forum." (citation omitted)); *Launer*, 916 F. Supp. at 210 (rejecting a "narrow view of events" in explaining that "the final or ultimate act causing injury need not occur in New York").

Moreover, as to Defendant's arguments, the Court is satisfied that a number of Plaintiff's factual allegations do, as pleaded, appear to relate to Defendant's transaction of business in New York. For example, in describing the alleged discrimination, Plaintiff specifically maintains that Mr. Baker "referred to [her] as 'sparkle' and brought her to business meetings to 'please' the male bankers," ECF No. 1, at 3—she elaborates that "a key meeting [she attended] in New York, New York with an investment bank" and other representatives of Defendant "was the meeting Mr. Baker asked [her] to attend to provide 'sparkle,'" ECF No. 10, at 3. Per that allegation, the meeting at which Plaintiff was supposed to "provide sparkle" occurred in New York.

In addition, Plaintiff claims that Mr. Baker "prohibited [her] from visiting [Defendant's] corporate office [in New Jersey] because she is a woman." ECF No. 1, at 3. As alleged, that sort of ongoing, discriminatory prohibition would necessarily continue to be imposed upon Plaintiff in New York, her regular place of work. Indeed, Plaintiff describes her continuing at-home work in New York as a partial function of the fact that Defendant "affirmatively did not want [her] in New Jersey," evidenced by repeated communications "that [she] did not need to come to the New Jersey offices after [she] expressed a desire to be there once a month." ECF No. 10, at 2–3.

Finally, the fact that Plaintiff alleges a hostile work environment reflects that her ongoing work conditions—not just isolated incidents—are at issue. *Cf. Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146(NRB), 2014 WL 3388866, at *12 (S.D.N.Y. July 11, 2014) (reasoning that, for an individual defendant, "[r]egardless of where [he] was physically standing when he uttered the statements . . . it was through his interactions with the New York office that he contributed to plaintiff's sexual orientation becoming a negative topic of conversation in that locale," and concluding that "[t]here is, at least, 'some articulable nexus' between [his] contacts with . . . New York . . . and the hostile work environment that plaintiff experienced there").

With respect to retaliation, Plaintiff references three occasions on which she complained to Defendant, but she only identifies a location for the first—in July 2016, she traveled to Defendant's corporate offices in New Jersey to make the complaint. The latter two complaints are described without reference to location. In addition, Plaintiff claims that she worked from home until she was fired, but she does not provide additional context for the termination. Nevertheless, the Court finds it pertinent that the complained-of conduct spurring Plaintiff's complaints occurred—as discussed—to some degree in New York. If Plaintiff was fired for complaining of discrimination she experienced in New York, her resulting retaliation claim cannot be characterized as "completely unmoored" from that New York discrimination. *Cf. Launer*, 916 F. Supp. at 210 ("[T]he final or ultimate act causing injury need not occur in New York. If religious discrimination was indeed a factor in Launer's firing in New York, then surely the firing was part and parcel of the final act, the failure to re-hire [in California]. . . . [V]iewing the totality of circumstances around [the] defendants' activity in New York, the necessary nexus exists between the transaction of business and the cause of action."). Thus, looking at the totality of the circumstances alleged in the light most favorable to Plaintiff, a sufficient relationship exists between Defendant's New York contacts and Plaintiff's claims of discrimination and retaliation.

In addressing its New York contacts, Defendant focuses only on Plaintiff's phone calls with Mr. Kohn, arguing that they "are insufficient to confer jurisdiction," *see* ECF No. 11, at 5. But Plaintiff has not sued Mr. Kohn individually—the question is not what Mr. Kohn, alone, did. Rather, the proper inquiry looks to the nexus between Defendant's transaction of business in New York, viewed in its totality, and the claims Plaintiff asserts. As previously discussed, Defendant's alleged transaction of business within New York clearly encompassed more than phone calls by

Mr. Kohn into the state.[5] Accordingly, for the reasons discussed, New York's long-arm statute permits the exercise of personal jurisdiction over Defendant.

## B. The Due Process Clause

Beyond its permissibility under New York's long-arm statute, the exercise of personal jurisdiction must also comport with the Due Process Clause of the U.S. Constitution. *See, e.g.*, *Chloé*, 616 F.3d at 164. To that end, the Court must ask (1) whether Defendant has the requisite "minimum contacts" in New York; and (2) whether the exercise of personal jurisdiction over Defendant is "reasonable." *See id.*

### 1. Minimum Contacts

The minimum-contacts inquiry looks to "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* While a court may find "specific" or "general" jurisdiction over a defendant, here, Plaintiff appears to argue only for specific jurisdiction. *See* ECF No. 10, at 7–8. As a result, the Court addresses only specific jurisdiction.

Specific jurisdiction exists when the claim at issue relates to the defendant's conduct with the forum.[6] *See, e.g.*, *Chloé*, 616 F.3d at 164. As with the long-arm inquiry, the Court looks to the totality of Defendant's New York contacts to determine whether Defendant "purposefully availed itself of the privilege of doing business in [New York] and could foresee being haled into court

---

[5] Moreover, as a general matter, Defendant is incorrect—while the "mere existence" of calls into New York, alone, may be insufficient to confer jurisdiction, where "the purpose of the calls is for the defendant to actively participate in business in New York, then [telephone calls into New York] alone may support a finding of New York long[-]arm jurisdiction under C.P.L.R. § 302(a) (1)." *Moore v. Publicis Group SA*, No. 11 Civ. 1279(ALC)(AJP), 2012 WL 6082454, at *8 (S.D.N.Y. Dec. 3, 2012) (quoting *Carlson v. Cuevas*, 932 F. Supp. 76, 78 (S.D.N.Y. 1996)); *see also Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 358 (S.D.N.Y. 2007) ("[T]ransactions [under section 302(a)(1)] may consist of telephone calls or other communications directed into the state.").

[6] By contrast, general jurisdiction exists by virtue of general business contacts with the forum, such that the claim may be unrelated to those contacts. *See, e.g.*, *Chloé*, 616 F.3d at 164.

there." *Licci IV*, 732 F.3d at 170 (quoting *Bank Brussels*, 305 F.3d at 127); *see also Chloé*, 616 F.3d at 164. In that vein, "[a] defendant who deliberately engages in significant activities with or creates continuing obligations to residents of the forum state may be considered to have fair warning that claims arising from such activity could subject them to jurisdiction in that forum." *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 359–60 (S.D.N.Y. 2007).

Here, as discussed, Defendant allegedly employed Plaintiff from her home in New York to provide marketing services in New York, communicated with her regularly in New York, and enlisted her representation at various business meetings in New York. In the course of engaging with and providing those services for Defendant in New York, Plaintiff allegedly experienced discrimination and, ultimately, retaliation by Defendant—thus, Defendant's New York contacts "are not the kind of 'random, fortuitous, or attenuated contacts' or 'unilateral activity of another party or a third person' that the purposeful availment requirement is designed to eliminate as a basis for jurisdiction." *Bank Brussels*, 305 F.3d at 128 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *see also id.* at 129; *Int'l Healthcare*, 270 F. Supp. 2d at 360 (determining that, with respect to individual defendants, "[b]ecause it is reasonably foreseeable that misconduct in the exercise of their supervisory authority over an employee might expose them to liability in the state of employment, the Court's exercise of [specific] jurisdiction over [them] is appropriate"); *cf. Peeq Media, LLC v. Buccheri*, No. 16-CV-5292 (JPO), 2016 WL 5947295, at *4 (S.D.N.Y. Oct. 13, 2016) ("Defendant's full-time employment with New York-based Peeq and New York-based Coloredge (even assuming substantial time worked from home) demonstrates that they 'purposefully availed' themselves of the 'privilege of doing business in the forum.' Such employment relationships evince an expectation that an out-of-state defendant may be haled into

court in New York."). Additionally, as discussed, various instances of alleged misconduct appear to be directly tied to New York. *Cf. Int'l Healthcare*, 270 F. Supp. 2d at 359 (reasoning that, for individual defendants, "the alleged misconduct comprised transactions that were purposefully directed toward New York, indicating a preliminary finding of specific jurisdiction"). Based on Defendant's ties to New York as alleged in the Complaint, Defendant has the requisite minimum contacts in New York.

### 2. Reasonableness

The reasonableness inquiry asks "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Chloé*, 616 F.3d at 164 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To that end, courts must assess the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id.* at 164–65. "[T]he exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts . . . [but] it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* at 165 (quoting *Burger King*, 471 U.S. at 477).

In balancing these factors, Plaintiff maintains that the first "cuts both ways," the second and third favor New York, and the fourth and fifth are neutral. ECF No. 10-3, at 8. Defendant does not walk through the same analysis—instead, it relies on not having minimum contacts, and then simply states that the exercise of personal jurisdiction "would be inconsistent with notions of 'fair play and substantial justice.'" ECF No. 8-1, at 15. Defendant's conclusory statement is no better

than "generalized complaints of inconvenience," which "do not add up to 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"[7] *See Chloé*, 616 F.3d at 173 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)); *see also Peeq*, 2016 WL 5947295, at *5; *Belluomo v. Tiger Schulmann's Mixed Martial Arts*, No. 14-CV-4402(JS)(AKT), 2015 WL 5794356, at *6 (E.D.N.Y. Sept. 30, 2015). Accordingly, the Court cannot deem this case "the 'exceptional situation' where exercise of jurisdiction is unreasonable even though minimum contacts are present." *Bank Brussels*, 305 F.3d at 130.

## II. Motion to Dismiss for Improper Service of Process

Defendant argues that, because it is not subject to personal jurisdiction in New York, Plaintiff's service of process upon the New York Secretary of State was improper. ECF No. 8-1, at 15. Consequently, it seeks to have the Complaint dismissed under Rule 12(b)(5) for improper service. *Id.* However, because the Court has concluded that Defendant is subject to personal jurisdiction in New York, Defendant's contingent argument regarding service necessarily fails. *See* N.Y. Ltd. Liab. Co. Law § 304(a) (McKinney 2018) (permitting service upon the New York Secretary of States as the "agent" of a foreign limited liability company); *Werst v. Sarar USA Inc.*, No. 17-CV-2181 (VSB), 2018 WL 1399343, at *5 (S.D.N.Y. Mar. 16, 2018). Defendant's Motion to Dismiss for Improper Service is therefore DENIED.

---

[7] Moreover, the Court agrees, for the most part, with Plaintiff's analysis. With respect to the first factor, Defendant is based in New Jersey, but it would only be forced to travel to New York. Accordingly, that factor would weigh, at most, only slightly against New York. *See Bank Brussels*, 305 F.3d at 129–30 ("[T]he conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." (quoting *Metro. Life*, 84 F.3d at 574)). The second factor clearly weighs in favor of New York, since "a state frequently has a 'manifest interest in providing effective means of redress for its residents.'" *Chloé*, 616 F.3d at 173 (quoting *Burger King*, 471 U.S. at 483); *see also Int'l Healthcare*, 470 F. Supp. 2d at 360 ("New York has a particular interest in protecting its residents under its local human rights laws."). The third factor also weighs in favor of New York, given that Plaintiff resides in the district and chose this venue, *see Chloé*, 616 F.3d at 173; *Int'l Healthcare*, 370 F. Supp. 2d at 360, and the fourth and fifth factors appear to be fairly neutral.

## III.     Motion to Dismiss for Improper Venue

Defendant maintains that, if this case is not dismissed on one of the foregoing grounds, it should be dismissed for improper venue. ECF No. 8-1, at 15–16. From the outset, the Court notes that neither party cites the correct standard for assessing venue in a Title VII action. Defendant repeatedly cites the general venue statute, 28 U.S.C. § 1391(b),[8] and Plaintiff's argument tracks the language therein. *See* ECF No. 8-1, at 11; ECF No. 10-3, at 8–9; ECF No. 11, at 7–8. But the parties ignore § 1391(a), which instructs that the general venue statute is still subject to "[e]xcept[ions] as otherwise provided by law." 28 U.S.C. § 1391(a). In this case, with respect to venue, Title VII expressly provides as follows:

> [A]n action [brought under this subchapter] may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3); *see also Bolar v. Frank*, 938 F.2d 377, 378–79 (2d Cir. 1991). Here, Plaintiff would have presumably continued to work from her home in Rochester, New York had she not been terminated (by her account, for her complaints of discrimination). Accordingly, venue is proper in the Western District of New York, and Defendant's Motion to Dismiss for Improper Venue (ECF No. 8) is DENIED.

---

[8] Defendant also cites *Ayuso v. Reno*, No. 97 CV 2802, 1998 WL 34190552 (E.D.N.Y. Nov. 3, 1998), for the proposition that, in that case, "venue was not proper in New York as all the discriminatory actions occurred in California." ECF No. 11, at 8. But the *Ayuso* court (1) correctly used Title VII's venue provision, which—notwithstanding its citation to this case—Defendant does not; and (2) determined that, per Title VII's venue provision, *none* of the circumstances contemplated applied. *See Ayuso*, 1998 WL 34190552, at *3. Per Title VII's statutory standards, discussed *infra*, the *Ayuso* court determined that venue was improper because the plaintiff worked in California (and presumably would have continued to work there), the discriminatory acts took place in California, and the employment records would have been in California—not just because the discriminatory acts took place in California. *See id.*

## IV.    Request to Transfer Venue

As an alternative to dismissal, Defendant seeks to have this case transferred to the District of New Jersey. ECF No. 8-1, at 17. 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Resolving a motion to transfer "requires a two-part inquiry: first, 'whether the action to be transferred might have been brought in the transferee court; and second, whether considering the convenience of parties and witnesses, and the interest of justice, a transfer is appropriate.'" *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, No. 17-CV-6670 EAW, 2018 WL 4178267, at *4 (W.D.N.Y. Aug. 31, 2018) (quoting *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006)). "[A] plaintiff's choice of forum is generally entitled to substantial consideration," *Jarolim v. Akris Inc.*, No. 2015 WL 5821094, 2015 WL 5821094, at *6 (S.D.N.Y. Sept. 9, 2015), and "[t]he moving party carries the 'burden of making a strong case for transfer.'" *Travelers*, 2018 WL 4178267, at *4 (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)); *accord N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010).

Typically, if the first inquiry is resolved favorably for the moving party, the Court would then have to look to a number of factors to resolve the second inquiry, including

> (1) the convenience of the witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with governing law, (8) the weight accorded to [P]laintiff's choice of forum, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* (quoting *Fuji Photo*, 415 F. Supp. 2d at 373); *see also N.Y. Marine*, 599 F.3d at 112. Here, however, Defendant states only that, because "it is a resident of New Jersey," it "requests that this case be transferred" accordingly. ECF No. 8-1, at 17. While Defendant subsequently notes Plaintiff's failure to oppose the requested transfer, the Court will not read that silence as Plaintiff's express *consent* to transfer. In the absence of consent,[9] Defendant's cursory statement in support of transfer is plainly insufficient to meet its burden of demonstrating a "strong case."[10] Given that Defendant fails to make an attempt at the requisite showing, the Court need not engage in any further analysis, and the request to transfer is DENIED.

## CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss (ECF No. 8) is DENIED in all respects, and Defendant's alternative request to transfer this action (ECF No. 8) is also DENIED.

IT IS SO ORDERED.

Dated: September 12, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[9] If the parties do consent to transferring this case, they may file a stipulation stating as much.
[10] In its Reply, Defendant adds, in two lines, that potentially relevant documentation would be maintained in New Jersey, and Plaintiff admitted traveling to New Jersey. *See* ECF No. 11, at 8. Those additions would not elevate Defendant's showing to a "strong case" sufficient to override Plaintiff's choice of forum.